

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| PAULA WYRICK, | ) | |
| | ) | |
| Respondent, | ) | WD82557 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | November 12, 2019 |
| TERESA HENRY, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable S. Margene Burnett, Judge

Before Division One: Edward R. Ardini, Jr., Presiding Judge, Mark D. Pfeiffer, Judge
and Cynthia L. Martin, Judge

Teresa Henry ("Henry"), in her official capacity as the city clerk for the City of

Raytown, Missouri, appeals from several trial court orders and judgments addressing her

failure to disclose records pursuant to the Sunshine Law, section 610.010 *et seq.*[1]

("Sunshine Law"), and imposing a civil penalty and awarding attorneys' fees to Paula

Wyrick ("Wyrick"). Finding no error, we affirm, and remand for consideration of Wyrick's

motion for an additional award of attorneys' fees.

---

[1] All statutory references are to RSMo 2016, as supplemented through the date of Wyrick's Sunshine Law requests, unless otherwise noted.

## Factual and Procedural Background

Wyrick's mother, Cecile Leggio ("Leggio"), died shortly after sustaining injuries in a motor vehicle accident on December 31, 2016. The accident occurred at the intersection of Ralston Avenue and 67th Street in Raytown, Missouri. On January 13, 2017, The Gorny Law Firm sent a notice of claim to the City of Raytown on behalf of the Leggio family pursuant to section 82.210.[2]

On July 14, 2017, The Gorny Law Firm sent a request for records under the Sunshine Law to the City of Raytown's city clerk's office. The request was for the following records:

- All records pertaining to complaints about the safety of, or accidents occurring at or around, Ralston Avenue and 67th Street

- All records pertaining to the design of the intersection of Ralston Avenue and 67th Street

- All records pertaining to the traffic or other diagnostic studies conducted at the intersection of Ralston Avenue and 67th Street

On July 19, 2017, Henry sent a letter stating that the request for records under the Sunshine Law was denied pursuant to section 610.021.1. Henry's letter quoted from the referenced statute as follows:

"Except to the extent disclosure is otherwise required by law, a public governmental body is authorized to close meetings, records and votes, to the extent they relate to the following:

---

[2]Section 82.210 provides that "[n]o action shall be maintained against any city of this state . . . on account of any injuries growing out of any defect in the condition of any . . . street . . . until notice shall first have been given in writing to the mayor of said city, within ninety days of the occurrence for which such damage is claimed, stating the place where, the time when such injury was received, and the character and circumstances of the injury, and that the person so injured will claim damages therefor from such city."

(1) Legal actions, causes of action or litigation involving a public governmental body and any confidential or privileged communications between a public governmental body or its representatives and its attorneys. []."

On August 11, 2017, The Gorny Law Firm sent a second request for records under the Sunshine Law to the City of Raytown, directed to the public works department. The request was for the following records:

- All records pertaining to complaints about the safety or [sic], or accidents occurring at or around, Ralston Avenue and 67th Street

- All records pertaining to traffic or other diagnostic studies conducted at the intersection of Ralston Avenue and 67th Street

On August 21, 2017, Henry sent an email stating that, as had been the case in her July 19, 2017 letter, the request for records under the Sunshine Law was denied pursuant to section 610.021.1. Henry's email quoted the same language from the statute set forth in Henry's July 19, 2017 letter.

On August 28, 2017, The Gorny Law Firm emailed the attorney representing the City of Raytown and urged that the requested records were not exempt from disclosure merely because a client of the law firm might file a lawsuit. The email notified the City of Raytown that if it became necessary to file a Sunshine Law lawsuit, attorneys' fees would be sought.

No records were disclosed by the City of Raytown. On October 9, 2017, Wyrick field a petition against Henry in her official capacity. The petition sought a declaration that Henry purposefully violated the Sunshine Law; an injunction requiring disclosure of the

3

requested records; the assessment of a civil penalty in the amount of $5,000; and an award of attorneys' fees and costs.

Following discovery, Wyrick filed a motion for summary judgment ("Motion") which argued that she was entitled to all of the relief sought in her petition as a matter of law. Henry opposed the Motion. In her response to the Motion, Henry admitted certain of Wyrick's statements of uncontroverted facts including:

- That Henry is aware and has knowledge that the City of Raytown is a government entity subject to the Sunshine Law

- That in the absence of a notice of claim having been filed pursuant to section 82.210, Henry would normally produce copies of complaints about the intersection of Ralston Avenue and 67th Street in response to a Sunshine Law request

- That Henry does not know whether records pertaining to the design of the intersection of Ralston Avenue and 67th Street exist

- That Henry is "sure there are" road design or intersection design documents for intersections and roads maintained by the City of Raytown

- That in the absence of a notice of claim having been filed pursuant to section 82.210, Henry would normally provide records pertaining to traffic or other diagnostic studies conducted at the intersection of Ralston Avenue and 67th Street in response to a Sunshine Law request

- That the City of Raytown maintains traffic or other diagnostic studies conducted at the intersection of Ralston Avenue and 67th Street

- That Henry is aware and has knowledge that incident reports are open records subject to production under the Sunshine Law

- That Henry did not search for records responsive to either the July 17, 2017 Sunshine Law request or the August 11, 2017 Sunshine Law request

4

Henry also admitted in response to Requests for Admissions propounded by Wyrick that at the time of Wyrick's Sunshine Law requests, the City of Raytown had records pertaining to the design of the intersection of Ralston Avenue and 67th Street, and pertaining to traffic or other diagnostic studies conducted at the intersection of Ralston Avenue and 68th Street. Henry also admitted that in response to Wyrick's Sunshine Law requests, she had not searched for records pertaining to complaints about the safety of, or accidents occurring at or around, Ralston Avenue and 67th Street; the design of the intersection of Ralston Avenue and 67th Street; or traffic or other diagnostic studies conducted at the intersection of Ralston Avenue and 67th Street.

Following full briefing on the Motion, the trial court granted partial summary judgment in favor of Wyrick on July 10, 2018 ("Partial Summary Judgment"). The Partial Summary Judgment found that Wyrick's Sunshine Law requests fell into three categories:

> 1) records pertaining to the design of the intersection at Ralston and 67th Street; 2) records pertaining to the traffic or other diagnostic studies conducted at the intersection of Ralston and 67th Street; and 3) records pertaining to complaints about the safety of, or accidents occurring at or around, Ralston and 67th Street.

The trial court found that "[i]t is undisputed that these records fall within the definition of 'public record' as set forth in R.S.Mo. [section] 610.010(6)." The trial court further found that Henry had refused to search for or provide any of the requested records because she alleged they fell within the exception for litigation found at section 610.021(1). The trial court found that whether a requested record is closed under the litigation exception depends on the nature of the record itself. Based on that determination, the trial court concluded that the only records which might fall within the limited litigation exception were records

5

in the third request category (pertaining to complaints about the safety of, or accidents occurring at or around, Ralston and 67th Street).

As such, the Partial Summary Judgment granted summary judgment in favor of Wyrick with respect to records in the first and second request categories (pertaining to design, and to traffic or other diagnostic studies), and ordered Henry to disclose those records. The Partial Summary Judgment denied summary judgment with respect to records in the third request category (pertaining to complaints about safety or other accidents), but ordered Henry to produce those records for *in camera* inspection, subject to further order of the court regarding disclosure. Finally, the Partial Summary Judgment declined to enter summary judgment for Wyrick for civil penalties "at this time," and indicated that the trial court would address Wyrick's request for an assessment and award of civil penalties, costs, and attorneys' fees at the conclusion of the action.

On July 16, 2018, following *in camera* inspection of records within the third request category (pertaining to complaints about safety or other accidents), the trial court entered an order enumerating documents that were not subject to the litigation exception. The trial court ordered Henry to disclose the enumerated documents. The order found that other documents and photographs that had been produced for *in camera* inspection were directly "related to the accident involving [Leggio] and are subject to the [litigation] exception." The order directed the parties to schedule a final hearing on all unresolved matters.

After a hearing on November 19, 2018, the trial court entered a judgment/order finding that Henry's failure to disclose records in response to Wyrick's Sunshine Law requests rose to the level of knowing and purposeful violations of the Sunshine Law

6

because, during her hearing testimony, "[Henry] indicated she has implemented a policy to refuse the production of any requested documents to any citizen if that citizen has filed a notice of claim against the City of Raytown, regardless of the nature of the document requested." The trial court gave the parties until November 30, 2018, to brief the amount of attorneys' fees and penalties that should be assessed.

On February 7, 2019, the trial court entered a judgment imposing a $4,000 penalty on the City of Raytown for Henry's knowing and purposeful violations of the Sunshine Law, finding that "the evidence clearly establishes four separate and distinct violations," and "it is appropriate that a penalty be assessed with regard to each such violation." The trial court also ordered the City of Raytown to pay The Gorny Law Firm $38,550 in attorney fees.

Henry filed this timely appeal from the trial court's collective orders and judgments.[3]

**Analysis**

Henry asserts four points on appeal. First, she alleges it was error to grant Partial Summary Judgment in favor of Wyrick because all of the documents ordered disclosed "have a clear nexus to Wyrick's threatened litigation regarding [Leggio's] death," and thus should be closed under section 610.021(1). [Appellant's Brief, p. 12] In her second and third points, Henry alleges that the finding that Henry knowingly and purposefully violated the Sunshine Law is not supported by substantial evidence (point two) or the weight of the

---

[3]Upon entry of the trial court's February 7, 2019 judgment, all prior interlocutory orders and judgments became final and appealable. *See State ex rel. Koster v. ConocoPhillips Co.*, 493 S.W.3d 397, 401 (Mo. banc 2016) ("[A] final judgment necessarily incorporates all prior orders or judgments that adjudicated some--but fewer than all--of the claims and the rights and liabilities of the all the parties.").

evidence (point three) because Henry relied on counsel's "colorable but faulty reading of the law." [Appellant's Brief, pp. 22, 30] In her fourth point, Henry alleges that the trial court erred in awarding attorneys' fees and a civil penalty because the attorneys' fee request was unreasonable, and because the civil penalty was not supported by substantial evidence and was excessive.

***The Records Requested by Wyrick and Ordered Disclosed by the Trial Court Were Not Exempt from Disclosure Under the Sunshine Law (Point One)***

Henry argues that all of the records she was ordered to disclose to Wyrick were exempt from disclosure under the Sunshine Law pursuant to the litigation exception set forth at section 610.021(1). We disagree.

The Sunshine Law directs "that meetings, records, votes, actions, and deliberations of public governmental bodies be open to the public unless otherwise provided by law." Section 610.011.1. Thus, "[e]xcept as otherwise provided by law, . . . all public records of public governmental bodies shall be open to the public for inspection and copying as set forth in sections 610.023 to 610.026 . . . ." Section 610.011.2. Section 610.022.5 provides that "[p]ublic records shall be presumed to be open unless otherwise exempt pursuant to the provisions of this chapter." Section 610.011.1 underscores the legislature's intent to foster open and transparent operations by public governmental bodies by directing that the Sunshine Law "shall be liberally construed and [its] exceptions strictly construed to promote this public policy."

It is undisputed that the City of Raytown is a "public governmental body" as defined by section 610.010(4).[4]  And it is undisputed that the records requested by Wyrick's Sunshine Law requests are "public records" as defined by section 610.010(6).[5]  The narrow issue presented by Henry's first point on appeal is whether the public records requested by Wyrick and ordered disclosed by the trial court are exempt from Sunshine Law disclosure by a statutory exception, specifically section 610.021(1).

> Section 610.021(1) provides, in relevant part, as follows:
>
> Except to the extent disclosure is otherwise required by law, a public governmental body is authorized to close meetings, records and votes, to the extent they relate to the following:
>
> (1)    Legal actions, causes of action or litigation involving a public governmental body and any confidential or privileged communications between a public governmental body or its representatives and its attorneys.
> . . .

Henry took the position in response to Wyrick's Sunshine Law requests that all of the records requested by Wyrick fell within this statutory exception.  Henry argued that all public records in the City's possession were exempt from disclosure *to Wyrick* because the records became "related to" threatened litigation when the City of Raytown received Wyrick's notice of claim.  Henry admitted in proceedings before the trial court that if anyone other than Wyrick or her attorneys had requested the same records, the records would not be subject to the exception described in section 610.021(1).  Henry thus argued

---

[4]Section 610.010(4) defines "public governmental body" as "any legislative, administrative or governmental entity created by the constitution or statutes of this state, by order or ordinance of any political subdivision or district, judicial entities when operating in an administrative capacity, or by executive order."

[5]Section 610.010(6) defines a "public record" as "any record, whether written or electronically stored, retained by or of any public governmental body."

that application of section 610.021(1) depends on the identity of the person making a Sunshine Law request, and not on the nature of the record itself. The trial court disagreed and concluded that application of section 610.021(1) depends on the nature of the record itself, and not on the person making the Sunshine Law request.[6]

No Missouri case has addressed this precise issue. We therefore review the issue as one of first impression.

When interpreting a statute, our primary objective is to determine legislative intent based on the plain language of the statute. *Sun Aviation, Inc. v. L-3 Commc'ns Avionics Sys., Inc.*, 533 S.W.3d 720, 723 (Mo. banc 2017). Section 610.021(1) provides that "***records***" must be disclosed by a public governmental entity unless "***they relate to***" a legal action, cause of action, or litigation. The plain language of section 610.021(1) is unambiguous, and places the focus on the nature of the records themselves, without regard or reference to the person making the Sunshine Law request.

Henry relies on *Tuft v. City of St. Louis*, 936 S.W.2d 113 (Mo. App. E.D. 1997), to argue a contrary position. Henry claims that *Tuft* endorsed closing any public record that relates to potential litigation, and thus authorized closing records to any person who has threatened litigation. Henry's reading of *Tuft* is strained and unsupportable. *Tuft* did not address whether or how the identity a Sunshine Law requestor influences application of the litigation exception described in section 610.021(1). In fact, the person requesting records

---

[6]On appeal, Henry has changed her argument, and now contends that once Wyrick filed her notice of claim, the records requested by Wyrick became closed to all who might have requested them. That position is not consistent with the argument made before the trial court, as is evidenced by the trial court's finding that the nature of a record itself, and not the identity of the requestor, controls whether the record is closed under the Sunshine Law.

in *Tuft* was a reporter, and not a person who had threatened litigation against the public governmental entity. *Id.* at 115.

Contrary to Henry's heavy reliance*, Tuft* addressed two narrow issues, neither of which are applicable to the issues presented on appeal. First, in response to the requesting reporter's argument that a settlement agreement between the city and an employee had to be disclosed because section 610.021(1) only applied to pending, and not potential litigation, the Eastern District concluded that the phrase "[l]egal action, causes of action or litigation" includes within its scope "potential litigation." *Id.* at 117. Here, the trial court did not order the disclosure of records because it failed to appreciate that section 610.021(1) applies to potential litigation. Instead, the trial court ordered the disclosure of records because it found the inherent nature of the requested records did not "relate to" potential litigation.

Second, the requesting reporter in *Tuft* argued that even if section 610.021(1) applies to potential litigation, the settlement agreement fell within an exception to the "related to" litigation exception. When *Tuft* was decided, section 610.021(1) provided that:

> However, any minutes or vote relating to litigation involving a public governmental body shall be made public upon final disposition of the matter voted upon; . . .

Section 610.021(1), RSMo 1994. The reporter in *Tuft* argued that the requirement to disclose "any minutes or vote" encompassed settlement agreements approved or authorized by minutes or votes. *Tuft,* 936 S.W.2d at 118. The Eastern District disagreed, and found

11

that "[t]he terms 'vote' and 'minutes' are not ambiguous and [that] the settlement agreement is neither a vote nor minutes."[7] *Id.* at 119. This holding is of no import to Henry.

In short, *Tuft* cannot be read to stand for the proposition that public records can be closed to a person who has threatened litigation. Instead, *Tuft* underscores that the inherent nature of a record controls whether it is "related to" pending or potential litigation, and thus permissibly closed ***to all*** who might request the record. Indeed, *Tuft* cautioned public governmental bodies against broad reliance on section 610.021(1)'s exception for records "related to" litigation:

> [T]aken to extremes, virtually any controversial matter could be the subject of potential litigation and thus cited as a basis for closing virtually any record. Such an open ended application of the litigation exception would indeed be inconsistent with the requirement that exceptions to the Act be strictly construed. Where the justification offered is potential . . . litigation, the governmental entity should properly bear a heavy burden of demonstrating both a substantial likelihood that litigation may occur and ***a clear nexus between the document sought and the anticipated litigation***.

*Tuft*, 936 S.W.2d at 118 (emphasis added). *Tuft* recognized that section 610.021(1) focuses on the inherent nature of the record itself by requiring a "clear nexus" between the record sought and actual or threatened litigation. A record's inherent nature is a constant, divorced from the identity of the person requesting the record, and from whether a public governmental body has been placed on notice of possible litigation.

---

[7]The legislature took note, and effective August 28, 1998 (the year after *Tuft* was decided), amended section 610.021(1) so that the language referenced above now reads:

> However, any minutes, vote or settlement agreement relating to legal actions, causes of action or litigation involving a public governmental body or any agent or entity representing its interests or acting on its behalf or with its authority, including any insurance company acting on behalf of a public governmental body as its insured, shall be made public upon final disposition of the matter voted upon or upon the signing by the parties of the settlement agreement [unless exceptions described apply] . . . .

12

On appeal, Henry now argues that the records requested by Wyrick were "*related to*" litigation, and thus possessed the "clear nexus" to litigation *Tuft* requires, because all of the records were *relevant* to establish one or more of the essential elements of the "dangerous condition" exception to sovereign immunity set forth in section 537.600(2). [Appellant's Brief, p. 17] Henry argues that "nexus" means a "connection between things," and the records requested "are the very type of documents *admitted as evidence* to demonstrate a waiver of sovereign immunity and liability for a dangerous condition on public property." [Appellant's Brief, pp. 18, 21]

Henry's argument mistakenly conflates what is discoverable or admissible at trial with whether a public governmental body is excused from the mandatory obligation to disclose public records. A record that is not by its inherent nature "related to" litigation does not become so merely because it may be discoverable or admissible in litigation. At its core, Henry's argument is a mere recast of the now discredited argument that section 610.021(1) can be applied to close public records to a requesting party who has threatened litigation. Henry's argument would permit public governmental bodies to rely on the litigation exception "as a basis for closing virtually any record" in a manner that would "be inconsistent with the requirement that exceptions to the [Sunshine Law] be strictly construed." *Tuft*, 936 S.W.2d at 118.

We conclude that public records do not have a "clear nexus" to litigation merely because they could be relevant (that is, discoverable or admissible) in litigation threatened by a requesting party. Rather, when the focus is placed on the nature of the record itself as required by section 610.021(1), a "clear nexus" exists only in those narrow instances where

13

the record by its inherent nature "relates to" pending or threatened litigation--a determination that is not influenced by the identity of the person making a Sunshine Law, or by whether the public governmental body has been placed on notice of threatened litigation.

It is immaterial that the records ordered disclosed by the trial court might be relevant, (that is, discoverable or admissible), in potential litigation between Wyrick and the City of Raytown. The records ordered disclosed by the trial court do not possess, by their inherent nature, a clear nexus to litigation, and thus do not "relate to" litigation as that phrase is used in section 610.021(1).

Point One is denied.

### The Trial Court's Finding that Henry Knowingly and Purposefully Violated the Sunshine Law Is Supported by Substantial Evidence and by the Weight of the Evidence (Points Two and Three)

Henry alternatively argues that if she was obligated to disclose public records, it was nonetheless error for the trial court to find in its order dated November 19, 2018, that her Sunshine Law violations were knowing and purposeful. Henry claims this finding is not supported by substantial evidence and is against the weight of the evidence because she relied on the advice of counsel in refusing to disclose documents, and was found by the trial court to have "refus[ed] to produce the documents . . . under a colorable but faulty reading of *Tuft* and related case law."

"What constitutes a knowing or purposeful violation of the Sunshine Law is a question of law." *Laut v. City of Arnold*, 491 S.W.3d 191, 193 (Mo. banc 2016). "Section 610.027 expressly states that a knowing violation occurs when the public entity 'has

14

knowingly violated sections 610.010 to 610.026.'" *Id.* (quoting section 610.027.3). "To prove a 'knowing' violation, a party, therefore, must do more than show that the city knew that it was not producing the report . . . ." *Id.* Rather, "section 610.027.2 requires proof that the public entity knew that its failure to produce the report violated the Sunshine Law." *Id.* (citing section 610.027.3). "The standard required to prove a 'purposeful' violation under section 610.027 is greater--the party must show that the defendant 'purposefully violated section 610.010 to 610.026,' which [the Missouri Supreme Court] has defined as acting with 'a conscious design, intent, or plan to violate the law and d[id] so with awareness of the probable consequences.'" *Id.* (quoting *Spradlin v. City of Fulton*, 982 S.W.2d 255, 262 (Mo. banc 1998)).

Although the meaning of the terms "knowing" and "purposeful" is a question of law, "[w]hether the conduct of the city brings it within the scope of the statutory definitions of knowing and purposeful conduct is a question of fact." *Id.* at 196. "It [is] up to the trial court to weigh the evidence and resolve the factual question whether the city's conduct fell within the definitions of knowing or purposeful violations under section 610.027." *Id.* at 193. Here, the trial court weighed the evidence and found that Henry's violations of the Sunshine Law were knowing and purposeful because "[Henry] indicated she has implemented a policy to refuse the production of any requested documents to any citizen if that citizen has filed a notice of claim against the City of Raytown, regardless of the nature of the document requested." "Such factual determinations are reviewed by this Court under the standard set out in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)." *Id.* at 196. "Under that standard, it was up to the trial court, as fact finder, to determine

15

whether [Henry's] conduct was knowing or purposeful as those terms are used in section 610.027 when [she] declined to release" any records in response to Wyrick's Sunshine Law requests. *Id.*

Henry challenges the trial court's finding that her violations of the Sunshine Law were knowing and purposeful, contending the finding is not supported by substantial evidence or the weight of the evidence. "A trial court's judgment is not supported by substantial evidence when 'there is no evidence in the record tending to prove a fact that is necessary to sustain the [trial] court's judgment as a matter of law.'" *Id.* at 197 (quoting *Ivie v. Smith*, 439 S.W.3d 189, 200 (Mo. banc 2014)). "'When reviewing whether the [trial] court's judgment is supported by substantial evidence, appellate courts view the evidence in the light most favorable to the [trial] court's judgment and defer to the [trial] court's credibility determinations[,] . . . no contrary evidence need be considered on a substantial-evidence challenge . . . [and] [trial] courts are free to believe any, all, or none of the evidence presented at trial.'" *Id.* (quoting *Ivie*, 439 S.W.3d at 200).

In contrast, "'[a] claim that the judgment is against the weight of the evidence presupposes that there is sufficient evidence to support the judgment[,]' and a trial court's 'judgment is against the weight of the evidence only if the [trial] court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment.'" *Id.* (quoting *Ivie*, 439 S.W.3d at 206). "'Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is against the weight of the evidence with caution and with a firm belief that the decree or judgment is wrong.'" *Id.* (quoting *Murphy*, 536 S.W.2d at 32).

16

## Substantial Evidence Supports the Trial Court's Finding

The trial court based its finding that Henry's violations of the Sunshine Law were knowing and purposeful on the fact that "[Henry] indicated she has implemented a policy to refuse the production of any requested documents to any citizen if that citizen has filed a notice of claim against the City of Raytown, regardless of the nature of the document requested." Henry contends that no substantial evidence supports this finding. She cites to contrary evidence which she claims supports the conclusion that Henry's responses to Sunshine Laws requests varied when notices of claims had been filed, depending upon the advice of counsel.

Henry's request that we consider evidence that is contrary to the finding she challenges is the antithesis of our standard of review. When faced with a no substantial evidence challenge, no contrary evidence is to be considered. *Laut*, 491 S.W.3d at 197 (citing *Ivie*, 439 S.W.3d at 200). Rather, our review is limited to determining whether any evidence in the record supports the trial court's finding. *Id.*

Henry was deposed by Wyrick in the proceedings before the trial court, and portions of her deposition testimony were made a part of the record in connection with the summary judgment Motion. During her deposition, Henry testified as follows:

> Q:        . . . [Y]ou weren't going to -- you weren't going to give them up [referring to the requested records] on your own; right?
> A:    Correct.
>
> Q:        And you said that you're not going to file a declaratory judgment action to determine whether or not they should be produced; correct?
> A:    Correct.

17

Q:        What other way could someone in my client's situation get those documents?
        [By Henry's counsel:   If you know, you know.]
A:     ***Does your client have a friend?***

[Dep. Tr. p. 129; (emphasis added)]

During the hearing conducted in advance of the trial court's entry of its November 19, 2018 order, Henry testified in response to questions by Wyrick's counsel as follows:

Q:     You understand the purpose of the Sunshine Law?
A:     Yes.

Q:     The commitment to openness in government, essentially? Transparency in government?
A:     Yes.

. . . .

Q:     You understand that the openness provisions as interpreted by Missouri law should be liberally construed?
A:     Yes.

. . . .

Q:     In favor of production?
A:     Yes.

Q:     There are exceptions to the Sunshine Law.  You agree with that?
A:     Yes.

Q:     And you understand that applying those exceptions, that should be strictly . . . .
A:     Yes.

Q:     As city clerk you're custodian of all city records; correct?
A:     Yes.

. . . .

18

Q:      And you personally handle Sunshine requests when they come in to your office?

A:      For most departments, yes.

. . . .

Q:      But you're the quarterback, essentially. When the Sunshine request is made, you decide where things go?

A:      Yes.

Q:      And about 25 percent of your work as the city clerk is responding to Sunshine requests?

A:      Yes.

. . . .

Q:      You received a notice of claim that I filed on behalf of the family of Ms. Leggio; correct?

. . . .

A:      Yes.

. . . .

Q:      And then subsequently we filed on behalf of Ms. Leggio's family a request for documents on July 14, 2017?

A:      Yes.

Q:      And you got that?

A:      Yes.

Q:      And you sent that to counsel?

A:      Yes.

Q:      And in opening that document, the Sunshine request, you read the categories of documents that I was asking for?

A:      Yes.

Q:      We asked for all records pertaining to complaints about the safety of or accidents at or around Ralston Avenue and 67th Street. Do you understand that?

A:      Yes.

19

Q: Those would--in fact, they're safety documents or documents regarding collisions at that location. Those would, by definition, be public records?
A: Yes.

Q: *We didn't ask for anything related to a potential lawsuit on behalf of Ms. Leggio; did we?*
A: *Not that I can recall.*

Q: You understood that that request was for safety complaints or information regarding collisions?
A: Yes.

Q: We also asked for all records pertaining to the design of the intersection of Ralston Avenue and 67th Street; correct?
A: Yes.

Q: Again, by definition, those would be public records?
A: Yes.

Q: We also asked for records pertaining to the traffic or other diagnostic studies conducted at the intersection of Ralston and 67th; correct? . . . .
. . . .
A: Yes.

Q: And by definition, if there are traffic studies done at that location, those would be public records; correct?
A: Yes.

Q: You understood the requests?
A: Yes.

Q: They were clear?
A; Yes.

Q: You were not confused?
A: No.

Q: You didn't ask anyone for clarification?
A: No.

Q: And you didn't search for any of the information we requested, did you?

A: No.

Q: In fact, we know now, based on her [sic] deposition, some of that information was actually in your physical office; correct?
A: Yes.

. . . .

Q: ***Did you understand that refusing to conduct a search and produce public records was a violation of the Sunshine Law?***
A: ***Yes.***

Q: Yet you did so knowingly and voluntarily?
A: Through the advice of my attorney, yes.

. . . .

Q: And having not searched for any of the information that I asked for, you agree you did not produce any of that information as well?
A: Correct.

Q: In fact, you are the one that drafted the denial letter; correct?
A: Through the advice of my attorney, yes.

Q: You drafted the letter; correct?
A: Yes.

Q: And you cited the Sunshine Law in that letter?
A: I did.

Q: And you claim that because there may be litigation against the City, you weren't going to produce anything; correct?
A: Correct.

. . . .

Q: ***It was your position that the Sunshine Law states that because someone may have a claim against the City, they are not allowed to get any public records?***
A: ***Correct.***

21

Q:     Did you have authority for that outside of what counsel told you to do or not do?

A:     To deny the records?

Q:     Yes.

A:     Through the advice of my attorney, yes.

Q:     I appreciate that.  Absent what [counsel] or someone else told you, did you have some authority in that manual in your office, the Sunshine Manual, that says simply because someone might have a claim against the City, they don't get any public records?

A:     Yes.

Q:     What authority did you have for that?

A:     To release those?

Q:     Yes.

A:     Or to not release those?

Q:     To not release them.

A:     As the custodian of the records that is my job.

Q:     And so you're, again, the quarterback who decides whether to release them or not?

A:     That's correct.

Q:     Have you ever heard of a decision called *Tuft*?

A:     Yes.

Q:     When was the first time you heard of that?

A:     I think it would be in the motion made by the Court.

. . . .

Q:     You've never read it?

A:     No.

Q:     And similarly, you got another request from my office on -- filed on August 11, 2017; correct?

A:     Yes.

. . . .

22

Q:   And, again, those requests weren't confusing?
A:   No.

Q:   You understood what they were looking for?
A:   Yes.

Q:   They were, in fact, by definition, all public records?
A:   Yes.

Q:   And you, as the quarterback, decided, again, not to search for or produce any of that information?
A:   Through the advice of my attorney, yes.

Q:   And did you, again, draft the denial?  I think it was an email on that instance; correct?
A:   I did.
. . . .

Q:   *Have you ever--outside of [current outside counsel], have you ever sought an opinion . . . from anyone in the State of Missouri, with regards to whether someone who may have a claim against the City, whether they are not entitled to public records?*
A:   *Yes.*

Q:   *Okay.  From whom did you seek that?*
A:   *Our city counsel.  Or city attorney.*


Q:   *Who is that?*
A:   *[Henry identified an attorney, who is not the attorney consulted in connection with Wyrick's Sunshine Law requests]*

Q:   *And was that in connection with this case as well?*
A:   *No.*

Q:   *So there are prior occasions when someone who may have a claim against the City sought public records; correct?*
A:   *Correct.*

Q:   *And similar to this particular instance, you've refused to produce the records in that case or those cases as well?*
A:   *No.*

Q: ***Did you produce them in those cases?***
A: ***Yes.***

. . . .

Q: Why did you produce them in those cases and not this one?
A: Through the advice of my attorney.

. . . .

Q: And so it's your policy, as the clerk for the City of Raytown, to not search for or produce public records for someone who has a potential claim against the City unless directed to by somebody else?
A: By our legal counsel, yes.

Q: In other instances, all other instances in which someone makes an open records request and does not have a notice of claim on file against the City, you get to make the decision as to whether to produce them; correct?
A: Correct.

Q: So the policy is only different for folks like my clients who served a notice of claim against the City?
A: Correct.

[Tr. pp. 4-17 (emphasis added)]

From Henry's deposition and hearing testimony, the trial court had substantial evidence from which it could conclude that Henry understood the records requested by Wyrick were public records; that the records had to be disclosed unless an exception applied to their disclosure; that disclosures were to be narrowly construed; that it was Henry's policy to treat people making Sunshine Law requests differently if they had filed a notice of claim against the City of Raytown; that she believed it appropriate to refuse to disclose any public records to a person who had filed a notice of claim against the City of Raytown; that notwithstanding this alleged belief, which Henry attributed to the advice of counsel, Henry had previously received a contrary opinion ***from the City attorney*** who

advised her to disclose public records to a person who had filed a notice of claim; and that even though Henry had received conflicting advice *from the City attorney* about whether she could refuse to disclose public records to a person who had filed a notice of claim, she conducted no search of records in response to Wyrick's Sunshine Law requests, and summarily refused to disclose public records to Wyrick, because she had filed a notice of claim. This substantial evidence supports the trial court's finding that Wyrick's violations of the Sunshine Law were knowing and purposeful, as those terms are defined.

Our Supreme Court reached the same conclusion in an analogous set of circumstances in *Strake v. Robinwood West Community Improvement District*, 473 S.W.3d 642 (Mo. banc 2015). There, the Supreme Court *reversed* a trial court's finding that Sunshine Law violations were not knowing and purposeful where the public governmental body knew that section 610.021(1) plainly required the production of a settlement agreement unless closed by court order; knew that there was no court order closing the requested settlement agreement; but purportedly relied on the advice of counsel to refuse to disclose the settlement agreement. *Id.* at 644, 646. The Supreme Court noted that the advice of counsel relied on by the public governmental body *did not* advise the entity that the requested settlement agreement was a closed record, but instead recommended not disclosing the record because of a conflict between the obligation to disclose pursuant to the Sunshine Law and a confidentiality provision barring disclosure in the settlement agreement itself. *Id.* at 646. Because the advice of counsel notified the public governmental entity of its obligation to disclose under the Sunshine Law, the Supreme Court found the public governmental entity's decision not to disclose amounted to an

25

acknowledgement of actual knowledge of the obligation to do so. *Id.* And because despite this knowledge, the public governmental entity elected not to disclose in order "to avoid potential contractual liability," that amounted to a purposeful violation of the Sunshine Law, defined as "'a conscious design, intent, or plan to violate the law . . . with awareness of the probable consequences.'" *Id.* (quoting *Spradlin*, 982 S.W.2d at 262). As such, the Supreme Court found it to be error as a matter of law to conclude that the public governmental entity was entitled to rely with impunity on the advice of counsel in the face of evidence that that advice of counsel did not unequivocally instruct the entity that the record or records requested were closed. *Id.*

Similarly, Henry purports to have relied on the advice of counsel to close all of the public records sought by Wyrick's Sunshine Law requests. She implies by this testimony that the attorney consulted in response to Wyrick's request advised her she could close records if the person requesting same had filed a notice of claim. Yet, Henry testified that she received contrary advice from the City attorney. When asked if she had ever "sought an opinion" with regard to whether a person who has filed a notice of claim against the City can be denied access to public records, Henry confirmed that she had secured such an opinion from the City attorney in connection with an unrelated Sunshine Law request, and had been advised not to close public records to the requestor even though a notice of claim had been filed.

It is noteworthy that section 610.027.6 provides a public governmental body with a safe harbor when it is "in doubt about the legality of closing a particular . . . record," and among other things, authorizes the public governmental body to "seek a formal opinion of

26

. . . an attorney for the governmental body."  Henry did just that when she sought an opinion from the City attorney about whether she could close records requested to a person who has filed a notice of claim.  She was not free to ignore that opinion, only to later rely on a contrary opinion secured from a different attorney.  *Accord Laut*, 491 S.W.3d at 201 (holding that "reliance on counsel is not itself a defense where . . . no suit has been brought to determine whether the city could close [a public record] and no request was made for a formal opinion from the attorney general or city attorney as permitted by section 610.027.6).  Thus, even assuming that Henry's counsel in this case expressly advised that section 610.021(1) permitted Henry to close public records to Wyrick because she had filed a notice of claim, Henry knew that advice was inconsistent with advice previously secured from the City attorney.  Henry had actual knowledge that that her refusal to disclose records to Wyrick could violate the Sunshine Law.  Her decision to close records to Wyrick was also a purposeful violation, as Henry consciously relied on the advice of counsel, despite contrary advice received from the City attorney, with awareness of the probable consequences.

The trial court's finding that Henry's violations of the Sunshine Law were knowing and purposeful was supported by substantial evidence.

Point Two is denied.

### The Weight of the Evidence Supports the Trial Court's Finding

Similarly, the weight of the evidence supports the trial court's finding.  As noted, this claim of error presupposes, by its nature, "that there is sufficient evidence to support the judgment."  *Laut*, 491 S.W.3d at 197.  In light of that fact, "a trial court's 'judgment is

27

against the weight of the evidence only if the [trial] court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment.'" *Id.* (quoting *Ivie*, 439 S.W.3d at 206).

The substantial evidence described above renders nearly insurmountable Henry's burden to establish that the trial court's finding of knowing and purposeful violations was against the weight of the evidence. Henry highlights her practice of consulting with counsel to secure advice about whether to disclose public records on each occasion when the person requesting the records has filed a notice of claim. However, that claimed practice produced inconsistent opinions from counsel, according to Henry's testimony. Henry's purported decision to follow counsel's advice that public records need not be disclosed to Wyrick constituted a knowing and purposeful decision to disregard contrary advice refused from the City attorney, and established that Henry closed public records to Wyrick despite knowing her refusal could violate the Sunshine Law.

The only other evidence Henry relies on in connection with her "weight of the evidence" argument is the trial court's finding in the Partial Summary Judgment that Henry's failures to disclose had been based on Henry's "colorable but faulty reading of *Tuft*." The trial court's finding, which appears in an interlocutory order, was susceptible to change, however, based on subsequent evidence. Additional evidence (including Henry's testimony) was taken in a hearing conducted after the Partial Summary Judgment was entered. In that hearing, as noted above, Henry acknowledged she had never read the *Tuft* decision, and had not even heard of the case until it was mentioned in connection with Wyrick's Sunshine Law lawsuit. Henry's testimony belied, if not directly contradicted, the

28

claim that *Tuft* formed the basis for Henry's decision not to disclose public records to Wyrick. Even if we assume that Henry's counsel had read and relied on *Tuft* to advise Henry not to disclose records to Wyrick, the trial court expressly found in its November 19, 2018 judgment that "[h]aving heard the testimony of [Henry] . . . , the Court finds that the actions of [Henry] go beyond merely a colorable, but faulty, reading of *Tuft* . . . and related case law." [Doc. 41] We have already explained that this finding is supported not only by substantial evidence, but as well by a proper reading of *Tuft* and related case law.

"'Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong.'" *Laut*, 491 S.W.3d at 197 (quoting *Murphy*, 536 S.W.2d at 32). We do not have a firm belief that the trial court's judgment finding Henry's violations of the Sunshine Law to be knowing and purposeful is wrong.

Point Three is denied.

### *The Award of Attorneys' Fees Was Not Unreasonable, and the Civil Penalty Assessed Was Supported by Substantial Evidence and Was Not Excessive (Point Four)*

Henry's fourth point on appeal challenges the attorneys' fees awarded to The Gorny Law Firm as unreasonable, and contends that the $4,000 civil penalty assessed against the City of Raytown was not supported by substantial evidence and was excessive. This point on appeal is impermissibly multifarious.[8] However, we exercise our discretion *ex gratia* to review the merits of the point.

---

[8]Multifarious points raise multiple, discrete complaints of error, in violation of Rule 84.04(d)(1)(A), which requires discrete claims of error to be asserted in separate points relied on. "Nonetheless, because this infirmity does not impede review, we exercise our discretion to review the point[] *ex gratia*." *Shelter Mut. Ins. Co. v. Lester*, 544 S.W.3d 276, 280 n.3 (Mo. App. S.D. 2018).

Henry complains that the award of attorneys' fees in the amount of $38,550 to The Gorny Law Firm was excessive because the practical effect, given the time sheets submitted, was to award fees at hourly rates of $600 per hour and $350 per hour for the two attorneys involved in the case. We will not disturb a trial court's decision to award attorneys' fees absent an abuse of discretion. *Chasnoff v. Mokwa*, 466 S.W.3d 571, 584 (Mo. App. E.D. 2015). "'A court abuses its discretion when it awards an amount so arbitrarily arrived at, or so unreasonable, as to indicate indifference and a lack of proper consideration.'" *Id.* (quoting *Klinkerfuss v. Cronin*, 289 S.W.3d 607, 613 (Mo. App. E.D. 2009)).

The trial court did not arrive at the amount of attorneys' fees awarded unreasonably, as to indicate indifference or a lack of proper consideration. As the trial court's February 7, 2019 judgment awarding attorneys' fees noted, the matter before it "was anything but a standard, run-of-the-mill, records request and consumed more than a year of litigation before final resolution." Trial courts are "considered an expert on attorneys' fees, and the court has discretion to determine the fee award." *Chasnoff*, 466 S.W.3d at 584. Based on our review of the record, the trial court's award of attorneys' fees in the amount of $38,550 is not an abuse of discretion.

Henry next complains about the trial court's award of a civil penalty in the amount of $4,000. Henry argues that in making the award, the trial court failed to consider statutory factors as required, and unlawfully awarded the penalty by aggregating separate penalties for four distinct violations.

30

Section 610.027 addresses a trial court's authority to award civil penalties in response to determined Sunshine Law violations. Section 610.027.3 authorizes the imposition of a civil penalty for any knowing violation of the Sunshine Law in "an amount up to one thousand dollars." Section 610.027.4 authorizes the imposition of a civil penalty for any purposeful violation of the Sunshine Law in "an amount up to five thousand dollars."[9] In imposing a civil penalty under either section, the trial court is required to determine the amount of the penalty "by taking into account the size of the jurisdiction, the seriousness of the offense, and whether the public governmental body or member of a public governmental body had violated section 610.010 to 610.026 previously." Section 610.027.3; section 610.027.4.

Henry complains that the trial court's judgment "fail[ed] to address any of these factors," and that there was no evidence presented to the trial court of prior Sunshine Law violations, or about the size of the City of Raytown, or the "seriousness" of Henry's violations. [Appellant's Brief, pp. 36-37] The trial court's judgment was not required, however, to make findings with respect to the factors identified in sections 610.027.3 and .4. And no party asked the trial court to make findings regarding those factors as would have been permitted by Rule 73.01(c). The fact that no prior violations were established in the record does not preclude the imposition of a civil penalty. Though the population of the City of Raytown was not introduced in evidence, it defies logic to suggest that the size of the City of Raytown in the general sense is not a matter of common knowledge. Finally,

---

[9]Attorneys' fees are also authorized to be awarded by both sections 610.027.3 and .4, though they "may" be awarded if a knowing violation of the Sunshine Law is determined (section 610.027.3) and "shall" be awarded if a purposeful violation of the Sunshine Law is determined (section 610.027.4).

the trial court plainly considered the seriousness of Henry's violations by finding them to be knowing and purposeful given an implemented policy to refuse the production of requested public records otherwise subject to disclosure based solely on whether the person making the request had filed a notice of claim against the City of Raytown. The trial court's decision to impose a civil penalty was supported by substantial evidence and did not fail to consider relevant factors identified in section 610.027.

Henry's complaint about the amount of the civil penalty imposed generates from the trial court's conclusion in its February 7, 2019 judgment that "the evidence clearly established four separate and distinct violations of the Sunshine Law by [Henry] and it is appropriate that a penalty be assessed with regard to each such violation."[10] It is plain from the judgment that the trial court intended to "stack" four penalties, each in the amount of $1,000, as the February 7, 2019 judgment expressly rejected Henry's argument that section 610.027 does not authorize stacking of civil penalties.

We need not address whether section 610.027 authorizes stacking of imposed civil penalties in the face of multiple Sunshine Law violations. Here, the total civil penalty imposed was $4,000. Section 610.027.4 authorized the imposition of a penalty in an amount up to $5,000. Because the total civil penalty imposed did not exceed the amount expressly authorized by section 610.027.4 for a purposeful violation of the Sunshine Law, it is irrelevant that the methodology employed by the trial court to explain the amount of

---

[10]The February 7, 2019 judgment does not identify the four distinct Sunshine Law violations. It appears from the record, however, that this finding was based on Wyrick's argument that each of her Sunshine Law requests (July 14, 2017, and August 11, 2017) was violated in two ways by Henry: (i) by failing to search for documents responsive to the requests, and (ii) by failing to disclose public documents responsive to the requests.

32

the civil penalty imposed suggests the imposition of a penalty for four distinct violations. *See* Rule 84.13(b) (noting that an appellate court will not reverse a judgment unless the trial court committed error that materially affected the merits of the action). Even presuming it is error to stack civil penalties for multiple Sunshine Law violations (an issue we need not decide), that error does not prejudice a public governmental body if the total civil penalty imposed does not exceed the amount expressly authorized by section 610.027. *See Taylor v. Taylor*, 908 S.W.2d 361, 363 (Mo. App. W.D. 1995) ("Error is not prejudicial where the appellant's rights are unaffected by the allegedly erroneous ruling.").

The trial court's award of attorneys' fees and imposition of a civil penalty were not erroneous.

Point Four is denied.

### Pending Motion for Attorneys' Fees

Wyrick has filed a motion for an award of her appellate attorneys' fees. "[T]he entitlement to attorneys' fees on appeal stands on the same ground as that at the trial court level." *Vogt v. Emmons*, 181 S.W.3d 87, 97 (Mo. App. E.D. 2005). "[A]lthough appellate courts have the authority to allow and fix the amount of attorney's fees on appeal, we exercise this power with caution, believing in most cases that the trial court is better equipped to hear evidence and argument on this issue and determine the reasonableness of the fee requested." *Rosehill Gardens, Inc. v. Luttrell*, 67 S.W.3d 641, 648 (Mo. App. W.D. 2002). We therefore remand this matter to the trial court for the limited purpose of determining Wyrick's motion for an award of attorneys' fees on appeal.

## Conclusion

The trial court's judgment is affirmed.  This case is remanded to the trial court to determine Wyrick's motion for attorneys' fees on appeal.


_Cynthia L. Martin_____
Cynthia L. Martin, Judge

All concur

34